## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**ANTHONY SCOTT, et al.,**

        **Plaintiffs,**

                                      **Case No. 3:09-CV-147**

**-v-**                                    **Judge Thomas M. Rose**

**THOMAS & KING, INC., d/b/a**
**APPLEBEE'S NEIGHBORHOOD GRILL**
**& BAR,**

        **Defendant.**

---

### ENTRY AND ORDER GRANTING IN PART AND OVERRULING IN PART THOMAS & KING'S MOTION FOR SUMMARY JUDGMENT (Doc. #41)

---

This action was originally brought by sixteen (16) Plaintiffs in the Court of Common Pleas of Clark County, Ohio. It was subsequently removed to this Court by the Defendant based upon this Court having both federal question and diversity jurisdiction. (Doc. #1.) Plaintiffs did not object to the removal and subsequently amended their Complaint on September 9, 2009, adding a new claim for violation of 42 U.S.C. § 1981.

Six of these initial Plaintiffs have been dismissed without prejudice because they failed to appear for their depositions. (Doc. #69.) The remaining Plaintiffs are Asia Averhart ("Averhart"), Antwan Johnson ("Johnson"), Ryan McAfee ("McAfee"), Courtney Portis ("Portis"), Angela Nicholson-Woods ("Nicholson-Woods"), Bobby Buford ("Buford"), Eric Taylor ("Taylor"), Ashley Scott, Anthony Scott (a/k/a Anthony Cosby and Chikira Abrams ("Abrams"). The remaining ten (10) Plaintiffs are collectively referred to herein as "Plaintiffs."

Plaintiffs' First Amended Complaint brings forth four (4) Claims for Relief. (Doc. #10.)

Plaintiffs' First Claim for Relief is for public accommodation discrimination in violation of Ohio Rev. Code §§ 4112.02(g) and 4122.99. Plaintiffs' Second Claim for Relief is for negligence, willful/intentional and/or reckless acts/conduct. Plaintiffs' Third Claim for Relief is for breach of Defendant's custom, practices and policies resulting in public policy violations, and Plaintiffs' Fourth Claim for Relief is for violation of 42 U.S.C. § 1981.

Now before the Court is a Motion for Summary Judgment on all claims submitted by Defendant Thomas & King, Inc., d/b/a Applebee's Neighborhood Grill & Bar ("Thomas & King"). (Doc. #41.) This matter is now fully briefed, including a sur-reply (doc. #75), and ripe for decision. The relevant facts will first be set forth followed by the relevant legal provisions and an analysis of the Motion.

## RELEVANT FACTS

Following is a summary of the facts, which, unless otherwise noted, are undisputed. When disputed, the Court accepts the non-movant's version, as the Court is required to do when deciding a motion for summary judgment.

### Background

Defendant Thomas & King is a franchisee of, among other things, Applebee's Neighborhood Grill & Bar restaurants. (Deposition of Mike Scanlon ("Scanlon Dep.") 15-16 Mar. 24, 2010.) Mike Scanlon is the Chief Executive Officer of Thomas & King. (Id. 15-17.) One of Thomas & King's franchises is located at 1800 West First Street in Springfield, Ohio ("Applebee's").

The Plaintiffs in this matter were young, African-American adults who frequented Applebee's, generally after high school sporting events. (Deposition of Eric B. Taylor ("Taylor

Dep.") 42, 57-58 Apr. 8, 2010; Deposition of Asia Laroyce Averhart ("Averhart Dep.") 8 Apr. 7,

2010; Deposition of Ashely Monique Scott ("Scott Dep.") 42, 51-52 Apr. 7, 2010; Deposition of

Ryan N. McAfee ("McAfee Dep.") 42-43 Apr. 7, 2010.) Applebee's was a gathering place for

students and young people to meet after rival games and was normally crowded and festive on a

Friday night during such times.  (Deposition of Walter H. Stevenson ("Stevenson Dep.") 72 Apr.

9, 2010.)

Each Plaintiff had been to Applebee's on a regular basis with both friends and family

prior to the incident that occurred on February 9, 2007. (Taylor Dep. 52; Averhart Dep. 37-38;

McAfee Dep. 30; Deposition of Chikira Abrams ("Abrams Dep.") 39 Apr. 7, 2010; Deposition

of Antwan L. Johnson ("Johnson Dep.") 21-22 Apr. 8, 2010; Deposition of Courtney Susiette

Portis ("Portis Dep.") 57-58 Apr. 8, 2010; Deposition of Robert Edward Buford, III ("Buford

Dep.") 67, Ex. 3 Mar. 25, 2010; Deposition of Angela Michelle Woods ("Woods Dep.") 36 Mar.

25, 2010.) On prior visits to Applebee's, each of the Plaintiffs was served without incident.

(Taylor Dep. 55, 59; Averhart Dep. 38; Scott Dep. 43; McAfee Dep. 31; Abrams Dep. 40;

Johnson Dep. 29; Portis Dep. 59; Woods Dep. 36.)

Approximately two weeks prior to February 9, 2007, a party of 15 to 18 young adults

came to Applebee's restaurant for late night happy hour. (Deposition of Stephanie Nicole Smith

("Smith Dep.") 26-27, 60 Apr. 9, 2010.) On that occasion, the party was served by Stephanie

Smith ("Smith"). (Id.) In the process of serving the party, Smith was subjected to rude, offensive

and hurtful treatment, including being called "stupid," "white girl," and "bitch" to the point

where Smith was on the verge of tears. (Id. 29, 45, 62, Ex. 2.) Also, after the party left the

restaurant on that evening, Smith determined that not everyone had paid for their food. (Id. 61.)

-3-

According to Assistant General Manager Walter Stevenson, Applebee's had experienced difficulty with the same core group of young adults in the past. (Stevenson Dep. 40, 43, 51-53.) Stevenson testified that this core group of young people would come into Applebee's every Friday night after ballgames and that Applebee's would have problems with them being rude and disrespectful to their servers and some would not pay. (Id. 41.)

Thomas & King does not permit its service staff to be abused or discriminated against by its guests in the restaurant. (Scanlon Dep. 29; Stevenson Dep. 65.) Accordingly, based upon Applebee's previous experiences with this core group of individuals, General Manager Gary Kirk ("Kirk")  made the decision that these individuals would no longer be permitted in the restaurant. (Stevenson Dep. 53.) Kirk decided that, if this core group came into the restaurant, they would be asked to leave. (Id.)

### The Incident

On February 9, 2007, at approximately 10:45 p.m., a group of sixteen (16) young high school and college-age African-Americans, including the Plaintiffs, entered Applebee's following a local high school basketball game. (Stevenson Dep. 38.) The group included seven (7) females. At that time, Applebee's was crowded and the party's name was placed on the wait list because there was not a table large enough for the entire party to be seated together. (Smith Dep. 23; Stevenson Dep. 72; Taylor Dep. 43; Averhart Dep. 29; Scott Dep. 31-32; Buford Dep. 21, 37; Woods Dep. 21.) The party's name was placed on the wait list under the name of Aaron Cosby (a/k/a Aaron Scott)("Cosby"). (Taylor Dep. 43.) Smith who had previously waited on some individuals in the Cosby party was on duty that evening. (Smith Dep. 11.)

Shortly after the Cosby party arrived, Smith and at least two other servers became aware

-4-

that the core group that Smith had previously had problems with had arrived and was waiting for

a table. (Smith Dep. 19.) Smith then notified Stevenson, who was the only manager on duty at

the time, that the core group of individuals who Kirk said would be asked to leave was there.

(Smith Dep. 47-49, 51; Stevenson Dep. 23-29, 35, 37.)

Neither Stevenson or Smith could offer names or physical descriptions of the core group

that had previously allegedly caused problems at Applebee's. (Stevenson 42-47; Smith Dep. 31.)

However, Stevenson said that all of the core group were African-Americans, that he could

recognize them by their faces, that one of them wore a big gold chain with a big gold cross and

another had gold teeth caps and none were females. (Stevenson Dep. 42-47.) Stevenson also

testified that the core group would change the amount of people each time they came in, and the

core group consisted of five males. (Id.) Stevenson further testified that he had experienced

problems in the past with the core group of individuals, and that he did not get their names or

make a written description at the time of who they were. (Stevenson Dep. 52.)

Smith said that the core group were all African-American but "if they came in with a

hundred people," she could point them out. (Smith Dep. 31-41.) She also testified that no

incident reports were prepared at the time of  the previous occasions. (Id. 29.)

Stevenson asked Smith and Tanasha Cox to identify the group that they had problems

with in the past to make sure he was approaching the right group. (Stevenson Dep. 39.)

Stevenson then approached the hostess stand to locate the party and ask them who was in charge.

(Stevenson Dep. 33, 35-36, 39, 45, 62; Smith Dep. 51-52.) Cosby identified himself as the

person in charge. Stevenson then explained to Cosby that Applebee's had experienced problems

with some members of his party in the past, including not paying their bills, and Applebee's

would, therefore, not be able to serve them on that evening. (Stevenson Dep. 34, 62-64.)

The Plaintiffs testify that Stevenson told them that "you people" don't pay your bills. (See i.e. Averhart 43; Woods Dep. 27-28; Portis Dep. 26.) Plaintiffs also testify that Stevenson told them that he was going to call the police if they did not leave. (Woods Dep. 27-28; Buford Dep. 20-21.) Stevenson does not remember using the term "you people." Stevenson also was not certain who in the group had not paid their bill or been rude to Applebee's staff on previous occasions

While Stevenson was explaining this to Cosby and some other members of the party, others in the Cosby party went to another table of six African-American friends who had previously been seated and told them that the Cosby party was not going to be served. (Stevenson Dep. 34.) As a result, both parties left the restaurant. (Id.)

The Plaintiffs testified that they waited to be seated for approximately forty-five (45) minutes to an hour. (Buford Dep. 19; Scott Dep. 39-40.) But they were never seated nor were they ever served. (Woods Dep. 26, 31; Averhart Dep. 31-33; Stevenson Dep. 72.).)

All of the Plaintiffs testified that they had been to Applebee's prior to February 9, 2007 and that they had never created a problem, been disrespectful to a server or failed to pay their bills. (Taylor Dep. 59-60; Buford Dep. 77-79; Scott Dep. 44-48; Averhart Dep. 41-43; Abrams Dep. 43-44; McAfee Dep. 33-36; Woods Dep. 43-45; Johnson Dep. 64-65.) Stevenson conceded that it was possible that some of the Plaintiffs that he refused to serve on February 9, 2007, had previously paid their bills and had not been loud or abusive to any of the Applebee's staff. (Stevenson Dep. 64.)

**The Investigation and Results Thereof**

At the time of the February 9, 2007 incident, Patricia Johnson-Powell was the Director of Guest and Employee Relations for Thomas & King. (Deposition of Patricia Johnson-Powell ("Johnson-Powell Dep.") 60 Mar. 17, 2010.) She investigated the incident and concluded that Plaintiffs had not been denied service because of their race. (Id. 33-36.) To reach this conclusion, Powell relied, at least in part, upon Stevenson's and Smith's observations. (Id. 33-34.)

Because of the incident on February 9, 2007, all of the Plaintiffs filed charges of discrimination with the Ohio Civil Rights Commission ("OCRC"). On January 10, 2008, the OCRC issued a letter indicating that it is probable that Applebee's engaged in unlawful discrimination practices and that the OCRC was attempting to conciliate the matter by informal means. (Johnson-Powell Dep. 26-28, Ex. 1.) On April 6, 2009, the lawsuit that is now before the Court was filed.

## RELEVANT LEGAL PROVISIONS

### Summary Judgment

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

## State Law Claims

In reviewing an Ohio claim, this Court must apply the law of Ohio, as interpreted by the Supreme Court of Ohio. *Northland Ins. Co. v. Guardsman Prods. Inc.*, 141 F.3d 612, 617 (6th Cir. 1998). Specifically, this Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'" *Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001)(quoting *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998)).  Also, to the extent that the highest court in Ohio has not addressed the issue presented, this Court must anticipate how Ohio's highest court would rule. *Id.* (quoting *Bailey Farms. Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994)).

**Public Accommodation Claim - Ohio Rev. Code § 4112.02(G)**

"The main thrust of Ohio Rev. Code § 4112.02(G) is to provide legal recourse for those who have been discriminated against in their employment or in the use and enjoyment of public accommodations." *Jackson v. Poland Township*, No. 96 C.A. 261, 97 C.A. 13, 98 C.A. 105, 1999 Ohio App. LEXIS 4703 at *22 (Ohio Ct. App. Sep. 29, 1999). Section 4112.01(G) prohibits denial "to any person, except for reasons applicable to all persons regardless of race, …, [of] the full enjoyment of the accommodations, advantages, facilities or privileges of the place of public accommodation." Ohio Rev. Code § 4112.02(G). A place of public accommodation is defined to include: any inn; restaurant; eating house; barbershop; public conveyance by air, land or water; theater; store or other place for the sale of merchandise; or any other place of public accommodation or amusement where the accommodation, advantages, facilities or privileges thereof are available to the public. Ohio Rev. Code § 4112.01(1).

The test of whether Ohio Rev. Code § 4112.20(G) has been violated is whether the proprietor or manager of a place of public accommodation has denied to any person the full enjoyment of such place for reasons not applicable alike to all persons, irrespective of race, color, religion, national origin or ancestry. *Leach v. Heyman*, 233 F. Supp.2d 906, 911 (N.D. Ohio 2002). This requires that the Plaintiffs in this case have access to Applebee's services and products in the same manner as all other customers. *See id.*

The Ohio Supreme Court has determined that federal case law interpreting Title VII of the Civil Rights Act is generally applicable to cases involving alleged violations of Ohio Rev. Code Chapter 4112. *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission*, 421 N.E.2d 128 (1981). Thus, where the same facts and circumstances are

used to support both a § 1981 claim and a Chapter 4112 claim, the result on summary judgment

should be the same. *Halton v. Great Clips, Inc.*, 94 F. Supp.2d 856, 871 (N.D. Ohio 2000).

### Negligence Claim

The elements of an Ohio negligence claim are: (1) the defendant owed plaintiff a duty;

(2) the defendant breached that duty; and (3) such breach was the proximate cause of plaintiff's

injuries. *Lutz v. Chitwood*, 337 B.R. 160, 168 (S. D. Ohio 2005)(citing *Chambers v. St. Mary's*

*School*, 697 N.E.2d 198, 200 (Ohio 1998)). The existence of a duty is ordinarily a question of

law. *Id.* the determination of whether the duty was breached and whether such breach was the

proximate cause of an injury is generally a question of fact. *Id.*

Duty "is the court's expression of the sum total of those considerations of policy which

lead the law to say that the particular plaintiff is entitled to protection." *Mussivand v. David*, 544

N.E.2d 265, 270(Ohio 1989)(quoting Prossor, Law of Torts (4th ed. 1971) pp. 325-326)). The

common-law duty of care is that degree of care which an ordinarily reasonable and prudent

person exercises under the same or similar circumstances. *Id.*

### Public Policy Claim

Ohio has recognized a tort for violation of Ohio public policy. *See Wiles v. Medina Auto*

*Parts*, 773 N.E.2d 526 (2002). However, proof of this tort requires the discharge or discipline of

an employee for a reason which is prohibited by Ohio public policy. Id. at 529

Ohio also recognizes an actionable form of emotional distress in cases where the business

relationship of the plaintiff and defendant creates a situation where the plaintiff is entitled to

protection by the defendant. *Meyers v. Hot Bagels Factory, Inc.*, 721 N.E.2d 1068, 1076 (Ohio

Ct. App. 1999). Liability in such cases is premised on public policy that, by carrying on a

business of a public nature, an individual is "by law charged with the duty of extending to guests respectful and decent treatment and refraining from wilful conduct toward them that would interfere with their comfort or humiliate or distress them." *Id.* at 1077**.** The wilful conduct of the defendant and not necessarily the seriousness of the emotional distress gives rise to liability in this type of case. *Id.*

### Section 1981 Claim

Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts with both public and private actors. 42 U.S.C. § 1981(a). This statute extends to the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b).

#### Race Discrimination

To prevail on a claim of race discrimination under § 1981, a plaintiff must prove that the discrimination was intentional. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001). To prove intentional discrimination, a plaintiff may present direct evidence of race discrimination and/or circumstantial evidence of race discrimination.

"Simple teasing" or "offhand comments, and isolated incidents" do not amount to direct evidence of Title VII discrimination. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). For example, on this basis, a reference to "you people" is not direct evidence of discrimination. *Arnold v. Marous Brothers Construction, Inc.*, No. 1:03 CV 1761, 2005 U.S. Dist. LEXIS 44017 at *10 (N.D. Ohio Feb. 3, 2005); *accord Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

To prevail relying upon circumstantial evidence, a plaintiff must meet the burden-shifting

-12-

standard of proof for Title VII cases established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Christian*, 252 F.3d at 868. Under the *McDonnell Douglas* standard, "a plaintiff must first establish a prima facie case of race discrimination by a preponderance of the evidence. The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. To prevail, the plaintiff must then prove by a preponderance of the evidence that the defendant's proffered reason is not its true reason but a pretext for discrimination." *Id.* The plaintiff may prove that the defendant's proffered reason is a pretext for discrimination by proving that (1) the stated reason had no basis in fact; (2) the stated reason was not the actual reason; or (3) the stated reason was insufficient to explain the defendant's action. *Id.* at 879(citing *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000)). The ultimate burden of showing intentional discrimination remains at all times with the plaintiff. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993).

Prima Facie Case

In *Christian*, the Sixth Circuit defined the prima facie elements of a § 1981 claim in the context of commercial establishments, such as Applebee's in this case. Therein, the Sixth Circuit set forth the following elements of a prima facie case of race discrimination:

1. The plaintiff is a member of a protected class;

2. The plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and

3. The Plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that (a) the plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) the plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

The required showing of "markedly hostile" and "objectively discriminatory" conduct

-13-

was adopted to account for situations in the commercial establishment context in which the plaintiff cannot identify other similarly situated persons. *Id.* at 871. Factors relevant to a determination of "markedly hostile" and "objectively discriminatory" conduct include whether the conduct is "(1) so profoundly contrary to the manifest financial interests of the merchant and/or its employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination." *Id.*(quoting *Colloid v. Dave & Buster's, Inc.*, 98 F. Supp.2d 694, 705 (D. Md. 2000)).

Thus, to satisfy the second part of the third prong of the *Christian* elements, a plaintiff must show that he or she was treated in a objectively discriminatory manner on account of his or her race. *Miller v. Freedom Waffles, Inc.*, No. 3:06CV-159-H, 2007 U.S. Dist. LEXIS 13217 at *11 (W.D. Ky. Feb. 23, 2007). Many district courts have found that serious examples of racially-charged conduct, usually including racial epithets, are required to establish a prima facie case. *Id.* at *12. Further, many examples of treatment from a purportedly service-oriented industry, raise no inference of racial animus but are simply other examples of the decline of civility. *Id.* (citing *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 102 (2d Cir. 2001)).

### Legitimate, Non-Discriminatory Reason

If a prima facie case is presented, the burden of production shifts to the defendant to present a legitimate, non-discriminatory reason for its actions. If the defendant presents a legitimate, non-discriminatory reason for its actions, the burden then shifts to the plaintiff to show that the legitimate, non-discriminatory reason is a pretext for discrimination.

### Pretext

The pretext inquiry focuses on the defendant's beliefs and not the plaintiff's own

-14-

perceptions. *Wollford v. Restaurant Concepts, II, LLC*, No. 407CV011, 2008 U.S. Dist. LEXIS 5187 at *20 (S.D. Ga. Jan, 23, 2008). Thus, plaintiff must produce some evidence, other than her or his own subjective perceptions, to cast doubt on the defendant's beliefs. *Chappell v. GTE Products Corp.*, 803 F.3d 261, 268 (6th Cir. 1986); *Wollford*, 2008 U.S. Dist. LEXIS 5187 at *20; *Hollowell v. Society Bank & Trust*, 605 N.E.2d 954, 958 (Ohio Ct. App. 1992). Self-serving statements by the charging party that he or she believes he or she was discriminated against because of his or her race are not enough. *Hollowell*, 605 N.E.2d at 958.

Evidence of pretext when combined with the establishment of a prima facie case does not, however, require a denial of summary judgment. *Lizardo*, 270 F.3d at 103. Whether summary judgment is appropriate depends upon the strength of the prima facie case, the probative value of the proof that the defendant's explanation is false and any other evidence that supports the defendant's case. *Id.* For example, plaintiffs' evidence of pretext is not compelling when no comment or statement made by the defendant had any racial content or overtone, particularly where minorities were seated and served in the restaurant that evening. *Id.* at 103-04.

## ANALYSIS

Thomas & King seeks summary judgment on each of Plaintiffs' claims. Thus, each of Plaintiff's claims will be analyzed. The Court will begin with the § 1981 Claim because the law in this area is well developed and the results are generally applicable to the Ohio public accommodation claim.

### Section 1981 Claim

Section 1981 prohibits intentional race discrimination in situations such as the incident involving the Plaintiffs in this case. Thomas & King presents evidence that they did not

discriminate against the Plaintiffs due to the Plaintiffs' race on February 9, 2007.

To prevail on this claim, the Plaintiffs must show intentional race discrimination. To do so, they can present direct evidence of race discrimination and/or they can present circumstantial evidence of race discrimination.

The Plaintiffs identify the statement calling them "you people" as direct evidence of race discrimination. However, the term "you people" is commonly used in many contexts and, while offensive to some regardless of their race, cannot be said to specifically refer to race. Other courts have reached this same conclusion that the use of the term "you people" is not direct evidence of race discrimination.

Since the Plaintiffs have not identified direct evidence of race discrimination, the Court is to use the McDonnell Douglas burden-shifting framework to analyze the circumstantial evidence of race discrimination presented by the Plaintiffs.

Using the McDonnell Douglas burden-shifting framework, the Plaintiffs must first present evidence of a prima facie case of race discrimination. The Sixth Circuit has articulated the elements of a prima facie case of race discrimination in the context applicable to this case.

Prima Facie Case of Race Discrimination

The Plaintiffs must first present evidence that they are members of a protected class. In this case, the Plaintiffs present evidence that they are all African-American, a protected class. The first element is satisfied.

The Plaintiffs must next present evidence that they sought to make or enforce a contract for services ordinarily provided by Applebee's. In this case, the Plaintiffs have presented evidence that they attempted to obtain service from Applebee's on February 9, 2007. Thus, the

-16-

second element is satisfied.

The Plaintiffs must next present evidence that they were either (a) deprived of services while similarly situated persons outside the protected class were not and/or (b) they received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

The Plaintiffs have not presented evidence that they were deprived of services while similarly situated persons outside the protected class were not. Specifically, the Plaintiffs have not identified any Caucasians who had been to Applebee's in the past, had been brought to management's attention as creating a problem in the past and had subsequently not been served. (Averhart Dep. 43; McAfee Dep. 37; Abrams Dep. 47; Portis Dep. 68, Johnson Dep. 68; Woods Dep. 51; Buford Dep. 81-82; Scott Dep. 48.)

The Plaintiffs do, however, argue that they have presented evidence that they were treated in such a hostile manner that a reasonable person would find it objectively discriminatory. Factors relevant to this determination are whether the conduct is "so profoundly contrary to the manifest financial interests of the merchant and/or its employees; so far outside of widely-accepted business norms; and so arbitrary on its face that the conduct supports a rational inference of discrimination."

The evidence referred to by the Plaintiffs is the use of the words "you people." Also, Plaintiffs aver that they were all African-American and no Caucasians were in their group and that Stevenson refused to serve them after they waited for approximately 45 minutes.

As indicated above, the term "you people" is not considered to be a racial epithet and a number of district courts have found that far more serious examples of racially-charged conduct

are required to establish a prima facie case. *See e.g. Miller*, 2007 U.S. Dist. LEXIS 13217 at *12; *Campbell v. Triad Financial Corp.*, No. 5:070CV-579, 2007 U.S. Dist. LEXIS 77623 at *21 (N.D. Ohio Oct. 9, 2007); *Leach v. Heyman*, 233 F. Supp.2d 906 (N.D. Ohio 2002). Further, at least some of the Plaintiffs testified that Stevenson was neither rude nor hostile toward them on the evening of February 9, 2007. (Portis Dep. 46; Johnson Dep. 59; Buford De. 56.) Yet, other Plaintiffs testified that they thought Stevenson spoke in a hostile and unprofessional manner and threatened to call the police. (Averhart Dep. 35; McAfee Dep. 29.)

In sum, the Plaintiffs have not presented evidence that they were treated in an objectively discriminatory manner. The term "you people" is not a racial epithet. Further, waiting for a long period of time on a busy Friday evening seems to be the norm in some establishments and cannot be said to be objectively discriminatory due to race. Finally, Stevenson speaking in a hostile and unprofessional manner, if true, still does not rise to the level of being objectively discriminatory.

Plaintiffs have not shown that it was profoundly contrary to Applebee's financial interest, outside of widely-accepted business norms or so facially arbitrary to refuse to serve individuals who Applebee's thought had not paid their bills in the past and who had been rude to the wait staff. Thus, there are no genuine issues of material fact and Plaintiffs have not presented evidence that satisfies a prima face of race discrimination in a commercial establishment.

Legitimate, Non-Discriminatory Reason

Thomas & King sets forth a legitimate, non-discriminatory reason for refusing to serve the Plaintiffs on the evening of February 9, 2007. Stevenson and Smith believed that at least some of the Plaintiffs waiting to be served had acted rude and obnoxious in the past and had left

without paying their bills.[1] *See e.g. Smedley v. Dunkin Doughnuts, Inc.*, No. 73740, 1998 Ohio

App. LEXIS 6112 at *10 (Ohio Ct. App. Dec. 17, 1998); *Lizardo*, 270 F.3d 94; *Woolford*, 2008

U.S. Dist. LEXIS 5187 at *18; *Bivins v. Wrap It Up, Inc. d/b/a Nature's Way Café*, No. 07-

80159, 2007 U. S. Dist. LEXIS 77670 at * 19 (S.D. Fla. Oct. 18, 2007).

Pretext

The burden of production next shifts to Plaintiffs who are given the opportunity to show

that Thomas & King's legitimate, non-discriminatory reason is a pretext for discrimination. The

Plaintiffs can do this by showing that the stated reason has no basis in fact or the stated reason

was not the actual reason or the stated reason was insufficient to explain Thomas & King's

actions. However, they must satisfy this burden by producing some evidence, other than their

own subjective beliefs.

The Plaintiffs argue that Thomas & King's legitimate, non-discriminatory reason is a

pretext for discrimination because Stevenson testified that, when asked why he did not just deny

service to the five males whom he stated he could identify by facial recognition and by their

jewelry and gold-capped teeth, he could not provide a "straight answer." However, based upon

the evidence identified by the Plaintiffs, Stevenson did provide a "straight answer." When asked

this question, he responded:

> Well, it would be understood that if, as I said, they were the core individuals of
> the group - - had they been identified of [sic] people who had not paid their bill?
> No, because we are not certain who did not pay their bill because of the confusion
> that would take place at the time of presenting 12, the amount of checks, however

---

[1]The Defendant cites caselaw indicating that the Sixth Circuit applies the "honest belief" rule to legitimate, non-discriminatory reasons. *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). However, this case applies the "honest belief" rule to cases brought under the Rehabilitation Act and the Americans With Disabilities Act. This case does not, nor has the Defendant cited a case, that applies the "honest belief" rule to Title VII claims.

big the group was in the past, where it would be from 8 to 20 people.

Stevenson further responded:

> And the reason why is because if you are wanting to dine with someone, if I am
> going to point fingers and ask individuals to leave, would you assume that they
> would all leave?

(Stevenson Dep. 66, 69.) Stevenson's response is consistent with the legitimate, non-discriminatory reason and does not show that the reason is a pretext for discrimination.

The Plaintiffs identify no additional evidence beyond their own subjective beliefs, which are not enough, and the use of the term "you people," which is more fully discussed above. Thus, Plaintiffs offer no reliable evidence that Thomas & King's stated reason had no basis in fact or was insufficient to explain Thomas & King's actions.

The fact that Applebee's had regularly served African-American guests, including Plaintiffs and their families prior to February 9, 2007, and the fact that a number of African-Americans were seated and served on the evening of February 9, 2007, demonstrate that Thomas & King has a pattern and practice of regularly serving African-Americans. This fact further demonstrates that Thomas & King's legitimate, non-discriminatory reason for not serving the Plaintiffs on that occasion was not a pretext for discrimination.

The evidence offered to show that Thomas & King's legitimate, non-discriminatory reason was a pretext for discrimination is the same evidence offered to satisfy the third element of a prima facie case. However, as more fully explained above, the evidence identified by the Plaintiffs, beyond their own subjective beliefs, is not evidence of race discrimination and thus does not show that Thomas & King's legitimate, non-discriminatory reason was not the actual reason.

The Plaintiffs have not identified evidence that satisfies a prima facie case of race discrimination in a commercial establishment. Further, the Plaintiffs have not identified evidence that Thomas & King's legitimate, non-discriminatory reason for not serving them on the evening of February 9, 2009, was a pretext for discrimination. There is no reliable evidence that Thomas & King intentionally discriminated against the Plaintiffs due to their race. Therefore, there are no genuine issues of material fact and Thomas & King is entitled to judgment as a matter of law on Plaintiffs § 1981 claim.

### Public Accommodation Claim

Plaintiffs have brought their public accommodation claim pursuant to Ohio Rev. Code § 4112.02(G). The purpose of this section of the Ohio Revised Code applicable here is to provide a legal recourse for those who have been discriminated against in the use and enjoyment of public accommodations.

The Ohio Supreme Court has determined that federal caselaw interpreting Title VII of the Civil Rights Act is generally applicable to cases involving alleged violations of Ohio Rev. Code Chapter 4112 and the Parties here do not argue otherwise. The same facts and circumstances that Plaintiffs rely on to support their § 1981 claim are the same facts and circumstances that they rely on to support their Ohio public accommodation claim. The caselaw used to interpret Plaintiffs § 1981 claim is caselaw interpreting Title VII of the Civil Rights Act.  The same analysis applicable under Plaintiffs' § 1981 claim is also applicable here. Since the facts and circumstances, applicable law and analysis are the same, the results are necessarily the same.

Just as Plaintiffs are entitled to summary judgment on their § 1981 claim, they are entitled to summary judgment on their Ohio public accommodation claim. There are no genuine

issues of material fact and Thomas & King is entitled to judgment as a matter of law on Plaintiffs' claim that they were discriminated against due to their race in violation of Ohio Rev. Code § 4112.02(G).

### Negligence

Thomas & King argues that Plaintiffs' emotional distress claim fails as a matter of law. However, the Plaintiffs have not made a claim of intentional infliction of emotional distress or a claim of negligent infliction of emotional distress. Further, Thomas & King does not offer argument or identify evidence regarding Plaintiffs' negligence claim. Therefore, there are no genuine issues of material fact and Thomas & King is not entitled to judgment as a matter of law on Plaintiffs emotional distress claim because there is no such claim. Plaintiffs' negligence claim remains to be adjudicated.

### Public Policy Claim

The Plaintiffs claim that Thomas & King violated its own policy that "all persons are entitled to the full and equal enjoyment of the goods, services, facilities and accommodations of any Thomas & King restaurant without discrimination or segregation." (Johnson-Powell De. Ex. 10.) Thomas & King responds by pointing to another of its policies that does not permit its service staff to be abused or discriminated against by its guests. (Scanlon Dep. 29.)

The Plaintiffs have not identified any law saying that Thomas & King has a duty to them to follow its own policies and the Court is not aware of such law. Thus, this claim has no basis in the law. Therefore, Thomas & King is entitled to judgment as a matter of law on Plaintiffs' public policy claim.

### CONCLUSION

Plaintiffs have not identified evidence that satisfies all of the elements of a prima facie case of race discrimination pursuant to § 1981. They also have not identified evidence that would show that Thomas & King's legitimate, non-discriminatory reason for refusing to serve them on February 9, 2007, is a pretext for race discrimination.

Plaintiffs' public accommodation claim fails for the same reasons and based upon the same law and analysis as their § 1981 claim. Also, Plaintiffs' public policy claim fails because they have not identified any law that Thomas & King has a duty to them to follow its own policies.

Thomas & King has responded to an emotional distress claim but has not responded to Plaintiffs' negligence claim. Therefore, Plaintiffs' negligence claim remains.

In sum, Thomas & King's Motion for Summary Judgment (doc. 41) IS GRANTED IN PART and OVERRULED IN PART. There are no genuine issues of material fact and Thomas & King is entitled to judgment as a matter of law on Plaintiffs' § 1981, Ohio public accommodation and public policy claims. However, Thomas & King has not shown that they are entitled to judgment as a matter of law on Plaintiffs' negligence claim. Plaintiffs' negligence claim remains to be adjudicated.

**DONE** and **ORDERED** in Dayton, Ohio this Twenty-Eight Day of June, 2010.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record